UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| Taimi Fernandez-Guillot,<br>     Plaintiff, | )<br>)<br>) |
| vs. | ) CAUSE NO: 3:14-cv-1555<br>) |
| CRANE CO, a Delaware Corp.,<br>CRANE COMPOSITES an operating<br>     Division or group<br>     AND<br>CRANE COMPOSITES, INC. a<br>     Delaware Corp.<br>          Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)             Jury Trial Demanded |

COMPLAINT TORT FOR WRONGFUL TERMINATION

Plaintiff, by counsel, states as her cause of action against the defendant as follows:

1/   This is an action arising under the Indiana tort doctrine of wrongful termination commonly referred to as a *McClanahan* termination. *McClanahan v. Remington Freight Lines,* 517 N.E. 2d 390 (1988).

2/   Jurisdiction is based upon diversity of citizenship.

3/   The defendant corporations are foreign corporations admitted to do business in Indiana and their principle offices are in Stamford Connecticut and Channahon, Illinois.

4/   The plaintiff resides in Goshen, Indiana.

5/   The plaintiff is an experienced human resources professional holding both a Bachelor's and Master's degree from Florida International University.  She was employed in that capacity in Miami, Florida.

1

6/      On or about October 15, 2013 Ms. Fernandez-Guillot was recruited for the position of HR Manager at the defendants' fiberglass/composite manufacturing facility in Goshen, Indiana.  On December 2, 2013 she was the successful candidate for the position with an annual base compensation of $90,000.00 plus bonus.  Being a life-long resident of Florida, notwithstanding, she embraced this new position as an opportunity to professionally advance herself. She, her husband and their son moved to Goshen, Indiana.  Her business card read "Crane Composites Taimi Guillot HR Manager  2424 East Kercher Goshen, Indiana."

7/      Crane's(NYSE) corporate statement asserts: "At Crane, corporate citizenship is more than a responsibility: it's our way of doing business. The concept of corporate responsibility—where companies take responsibility not only for profits but also for the impact of their activities on the many different stakeholders with which it interacts—is the foundation on which our company was built and the common thread that ties together all that we do today. Every leadership conference, every investor presentation and each orientation session for a new employee begins with a discussion of the ethics on which our Company was founded, including honesty and fairness in dealings with customers, employees and even competitors, and the core values of today, which are integrity and performance with trust and respect."

8/      Crane's ethical spirit is expressed as: "The people of Crane are expected to conduct themselves with honesty and integrity in all facets of their business lives. Our CEO is not only our Chief Executive Officer but, informally, our Chief Ethics Officer, and he sets the tone at the top for doing the right thing, the

first time, and every time. Performance evaluations of our people include an assessment of ethical behavior and commitment to Crane's values.

Crane sustains its values through training in its Code of Ethics and in many specific operational areas, including export controls, anti-corruption, and workplace harassment. These are not just one-time sessions, but are refreshed and repeated regularly to complement our ethics education with compliance and responsibility training. We require that our managers provide regular reports and certifications that they understand and acknowledge their obligations to comply with both the spirit and letter of our Code and immediately report any issues that arises."

9/ The plaintiff was required by Crane to attend and complete corporate citizenship and ethics training. On January 25, 2014 she completed the required training to wit: "Global Bribery and Corruption Awareness," "Crane Code of Conduct from the Crane Co.'s Center for Interactive Compliance Training," and "Avoiding Illegal Competition."

10/ The plaintiff's HR reporting chain consisted of: Robert Burton Divisional VP HR (Crane Composites); Andrea Frohning Corporate VP HR (Crane Co); and Max Mitchell CEO Corporate (Crane Co). Her plant report was to Michael Ridge Plant Manager

11/ A critical function of her job was new employment screening, selecting, hiring, and current employee audits. A part of that function was the taking and reviewing of the I-9 Form of the United States Department of Homeland Security U.S. Citizenship and Immigration Services. And for ensuring and verifying the

accuracy of identification documents submitted by prospective and current employees in support of their I-9 Forms.

12/   As HR manager for the defendants' Goshen Plant she was the manager charged with the duty and responsibility to execute the employer Certification or rehire reverification, under penalties of perjury.

13/   On February 18, 2014 the plaintiff terminated Jose E. Rodriguez for providing false identification to obtain employment.  During his exit interview with the plaintiff he told her that most of the plant was, as he put it, "illegal."  In fact he had worked before under the name of Efrain Moran.   Thereafter, the plaintiff commenced the verification audit discovering extensive illegal employee at the Goshen Plant.

14/   Both the plant production manager and her manager Divisional VP Burton became engaged in this process by her advice.

15/   In April 2014 her direct report Divisional HR VP Robert Burton told her to get rid of any copies of employee identifications and proofs attached to their I-9 forms.  She refused.  During a meeting in the first week of April, 2014 Divisional HR VP Burton directed her to accept any proofs for an I-9 certification for these new employees  "…whatever, they give you…accept then sign the I-9 …don't inspect…don't do anything… you are not  ICE/INS.. just sign." She refused to sign new employees under these conditions.

16/   As of May 4, 2014 there continued to be undocumented employees in the Goshen plant and her efforts at following Crane's stated ethical policy was being thwarted.

4

17/   On May 4, 2014 plaintiff sent a communication to Divisional President Craney in Channahon, Illinois outlining the systemic issues of undocumented workers at the Goshen plant… the plaintiff pleaded her rationale to President Craney based upon:  " …my main responsibility is to protect our company from any legal implications while complying and enforcing Cranes' "Business Ethics and Compliance with Law Policy CP-102. We have a shared obligation to report any and all ethical risks to our senior management team, directors and officers to help foster a culture of honesty and accountability.  I want to work for a company that I am proud of and as our founder, RJ Crane , indoctrinated …"I am resolved to conduct my business in the strictest honesty and fairness, to avoid all deception and trickery…"

18/   On May 14, 2014, at the Lux Café in Goshen, Divisional HR VP Burton terminated the plaintiff saying …'you're just not a team player….' "…you have burned enough bridges and our people are not willing to give you a second chance…"

19/   In contravention of the public policy of the State of Indiana, defendants terminated the plaintiff for her refusal to engage in behavior for which she could have been criminally or civilly liable for perjury regarding required United States Homeland Security documents for employee hiring and continued employment

20/   Defendants' unlawful actions were intentional with knowledge of the falsity and accomplished in willful disregard of her rights protected by Indiana common law.

21/ Plaintiff has suffered lost income and will continue to incur lost income and suffered emotional pain and continues to suffer emotional pain resulting from defendants' willful unlawful conduct.

22/ Plaintiff requests that her trial be conducted before a jury.

REQUESTED RELIEF

WHEREFORE, PLAINTIFF, by counsel respectfully requests that this Court award judgment in the amount of $1,500,000.00 for economic loss and compensatory damages, and $500,000.00 in punitive damages to be awarded and determined by Indiana law.

Respectfully submitted,

*s/ Raymond J. Hafsten, Jr.*
Raymond J. Hafsten, Jr.
Of Counsel

*s/ John H. Haskin*
John H. Haskin

*s/ Bradley L. Wilson*
Bradley L. Wilson

JOHN H. HASKIN & ASSOCIATES
255 North Alabama Street 2nd Floor
Indianapolis, IN 46202
317-955-9500
FAX 317-955-2570
hafsten@sbcglobal.net
jhaskin@jhaskinlaw.com
bwilson@jhaskinlaw.com